# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,  <br>  Plaintiff,  <br> vs.  <br> CASEY LUCZAK,  <br>  Defendant. | Case No. 2:08-cr-00161-PMP-GWF  <br> **FINDINGS & RECOMMENDATIONS**  <br> **Motion to Suppress and for Return of Property and Request for Hearing – (#18, 19, 20)** |

This matter is before the Court on Defendant's Motion to Suppress and for Return of Property and Request for Hearing and for Review of Seized Evidence (#18, #19 and #20), filed on November 14, 2008; and the Government's Response to Defendant's Motion to Suppress and for Return of Property (#24), filed on December 8, 2008. The Court conducted a hearing in this matter on February 3, 2008. The Court directed the parties to file supplemental briefs. Defendant filed his Supplemental Points and Authorities in Support of Motion for Return and Suppression (#30) on February 11, 2009. The Government filed its Supplemental Response to Defendant's Motion to Suppress and Return of Property (#31) on February 14, 2009.

## FACTUAL BACKGROUND

Defendant Casey Luczak was indicted on May 28, 2008 on 26 counts of wire fraud pursuant to 18 U.S.C. § 1343 and one count for false statement pursuant to 18 U.S.C. § 1001. The indictment arises out of acts that allegedly occurred from 2002 to 2005.

On April 22, 2005, the Government applied to United States Magistrate Judge Lawrence R. Leavitt for the issuance of a search warrant for the premises known as 2605 Big Timber Drive, Las Vegas, Nevada. In support of its application, the Government submitted an affidavit by Annette Olsen, a

Special Agent of the Federal Bureau of Investigation. Agent Olsen stated that Casey Luczak controlled and operated two companies, The Interchange Group, Inc. ("TIG") and Gemini Capital Fund ("Gemini"). According to the affidavit, Luczak or TIG informed victims, i.e. prospective customers, that TIG would provide funding or collateral that the victims could use to obtain loans in return for advance fees. TIG allegedly promised to provide funding through Gemini or through alternative sources and also promised to return some or all of the processing fee if TIG was not able to secure funding. The affidavit stated that between 2001 and the present, numerous individuals had complained to the FBI about Luczak and TIG, and the FBI had identified other victims through review of bank records and other investigative means. The FBI interviewed eight victims each of whom stated that they had paid advance processing fees to TIG, but did not receive the loans or collateral promised by TIG and that the processing fees were not returned despite requests that TIG do so.

The affidavit stated that a review of TIG's bank account records failed to indicate that TIG was engaged in locating, securing or providing funding and collateral in accordance with TIG's promises. The bank records instead indicated that the funds that TIG received from customers were used to purchase luxury automobiles, a Ferrari, Dodge Viper and Corvette, and a Steinway piano. The bank records also revealed that numerous automatic teller machine (ATM) withdrawals were made from the account, including withdrawals made at casinos. Although TIG advertised that its Gemini fund contained more than $100 million in available assets, the FBI was unable to find any bank accounts, funds or other resources that indicated that Gemini had such assets. The records from Gemini's one bank account indicated that the funds in that account came from advance fee payments made by victims.

The Government asserted that there was probable cause to believe that evidence of crimes, including mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. §1343, and money laundering, 18 U.S.C. §§ 1956, 1957, would be found at 2605 Big Timber Drive, Las Vegas, Nevada, which was a residence at which Mr. Luczak operated TIG. The affidavit contained a detailed description of the premises to be searched and also stated that "Attachment B sets forth Items To Be Seized." Attachment B listed 18 categories of records or items to be seized. *April 22, 2005 Affidavit*, ¶¶ 74, 76

Based on the information contained in the affidavit, Judge Leavitt found that there was probable cause to support the issuance of the search warrant. The form search warrant signed by Judge Leavitt on

April 22, 2005 identified the premises to be searched as "2605 Big Timber Drive, Las Vegas, Nevada as described in paragraph 76, which is incorporated in the affidavit and made a part thereof." It described the items to be seized by stating: "See Attachment B, which is incorporated in the affidavit and made a part thereof." The search warrant form further stated:

> I am satisfied that the affidavit(s) attached hereto and incorporated herein and any record testimony established probable cause to believe that the person or property so described is now concealed on the person or premises above-described and established ground for the issuance of this warrant. Said Affidavit is attached hereto and incorporated by reference.

*April 22, 2005 Search Warrant.*

Judge Leavitt also granted the Government's ex parte application to seal the affidavit together with the Government's application and the court's sealing order.

The Government executed the search on April 25, 2005. Mr. Luczak was not present at 2605 Big Timber Drive when the search was executed. According to the Government, a person identified as "K.P." informed the agents that Mr. Luczak was in Atlanta, Georgia. "K.P." was identified in the affidavit as one of the persons associated with Mr. Luczak in the companies that operated the fraudulent scheme. *Affidavit*, ¶¶ 10, 14. Agent Olsen spoke with Mr. Luczak by telephone and told him that the agents were there to search the business premises. The agents then proceeded with the search during which numerous records were seized. At the conclusion of the search, the agents left a copy of the search warrant and an inventory of the items that had been seized.[1]

As the Government states in its response to the motion to suppress:

> However, due to the government's error in erroneously labeling the affidavit and attachment separate from the search warrant as "sealed," agents did not present or leave K.P. the sealed affidavit and attachments. Consequently, contrary to the directive of RCr 41(e), neither a detailed description of the location to be searched nor the list of items to be seized was provided to K.P., or left at the property for the defendant.

*Response (#24)*, p. 4.

. . .

---

[1] These facts are attested to in the recent affidavit of Agent Annette Murphy (Olsen) attached to the Government's Supplemental Response to Defendant's Motion to Suppress and Return Of Property (#31).

3

At the hearing on this motion, the Assistant United States Attorney ("AUSA") advised the Court that it was her error that a more detailed description of the premises and a copy of the attachment describing the items to be seized was not provided to the occupant or left at the premises with the search warrant during the April 2005 search. After the search was conducted, the AUSA realized that a copy of the affidavit or the attachment describing the items to be seized had not been provided to K.P. or left at the premises. The AUSA spoke to Mr. Luczak's counsel about returning the seized materials to him. According to the Government, however, Mr. Luczak had vacated his residence, left Nevada and moved to Mexico where he continued to reside until turning himself in following his indictment in May 2008. The Government was therefore unable to make arrangements with Mr. Luczak to actually return the seized items to him. Therefore, on June 9, 2005, the Government applied for and obtained an anticipatory search warrant which was based on the identical information set forth in the affidavit in support of the April 22, 2005 search warrant. Pursuant to the affidavit for the second anticipatory search warrant, the Government stated that it would return the seized items to 2605 Big Timber Drive, whereupon the Government would execute the second search warrant containing a proper description of the items to be seized, and again seize the "returned" property. The Government represents that its agents did not review the seized items prior to obtaining and executing the second search warrant.

After obtaining the anticipatory search warrant on June 9, 2005, the Government notified Mr. Luczak's attorney of the time and location where the agents intended to return the seized items. Having received no request from Mr. Luczak or his counsel that the items should be delivered to any other location, the Government returned the items to the premises at 2605 Big Timber Drive on June 10, 2005. By that date, the premises were unoccupied and vacant. The property owners were present, however. The agents physically placed the seized items on the property at 2605 Big Timber Drive. The agents thereupon stepped off the property, and then re-entered the property and "seized" the returned items pursuant to the anticipatory search warrant. The agents then left a copy of the second search warrant, together with the list of the items that were seized on the premises.

The parties' legal memoranda on this motion were based on the briefs they filed in 2005 in regard to Mr. Luczak's motion for return of property. As discussed below, however, since 2005 there have been significant developments in United States Supreme Court and Ninth Circuit case law regarding the

1  particularity requirement of the Fourth Amendment and the incorporation of an affidavit into a search
2  warrant.  *See  United States v. Grubbs*, 547 U.S. 90, 126 S.Ct. 1494 (2006) and *United States v. SDI*
3  *Future Health*, --- F.3d ---, 2009 WL 174910 (9th Cir. 2009).  In light of these decisions, the Court
4  advised the parties' counsel at the February 3rd hearing that proper resolution of the instant motion may
5  require testimony from the FBI agent responsible for execution of the April 25, 2005 search as to
6  whether the search warrant affidavit and Attachment "B" were physically present during the execution of
7  the search and whether those documents controlled or limited the conduct of the agents conducting the
8  search.   Defendant's counsel stated that an affidavit from the FBI agent in regard to these issue would be
9  acceptable and Defendant would not request an evidentiary hearing for purposes of cross-examining the
10 agent.  The Court also permitted the parties to file supplemental briefs regarding the applicability of the
11 foregoing cases to the circumstances presented in this case.
12        The Government has attached to its Supplemental Response to Defendant's Motion to Suppress
13 and Return Of Property (#31), filed on February 14, 2009, an affidavit by FBI Special Agent Annette
14 Murphy.  The Court infers from the content of the affidavit that Agent Annette Murphy is the same
15 person as Special Agent Annette Olsen.  In her recent affidavit, Agent Murphy states the April 25, 2005
16 search was executed by 10 FBI Special Agents and 2 FBI Support Staff.   She states that between April
17 22, 2005 when the Court issued the search warrant through and including April 25, 2005 when the search
18 warrant was executed, the FBI employees who constituted the search team were required to review a
19 copy of the search warrant and the affidavit and Attachment "B."   Each FBI employee signed the back
20 of a copy of the affidavit, acknowledging his/her review of the documents. *Supplemental Response*
21 *(#31), Murphy Affidavit*, ¶ 6. Agent Murphy also states that prior to the execution of the search warrant
22 on April 25, 2005, the agents met at a staging area near the premises to be searched.  At that time, "the
23 Search Warrant, Affidavit and Attachment "B" (Items to be Seized) were discussed in order to ensure all
24 participants fully understood the nature of the investigation and the items the magistrate had authorized
25 for seizure.  Any member of the FBI team who had not previously reviewed the Search Warrant,
26 Affidavit and Attachment "B" (Items to be Seized) was required to do so at the staging area prior to
27 execution of the warrant." *Murphy Affidavit*, ¶ 7.  Agent Murphy also states she was physically present
28 during the search at 2605 Big Timber Drive on April 25, 2005 and had a copy of the sealed Affidavit,

Attachment "B" and the search warrant in her personal possession *Id.*, ¶ 8.

## DISCUSSION

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." Rule 41(e)(2)(A) of the Federal Rules of Criminal Procedure further states that the warrant must identify the person or property to be searched and identify any person or property to be seized. The primary issue in this motion is whether the Government's failure to attach the list of the items to be seized to the search warrant that was executed on April 22, 2005 rendered the search constitutionally invalid such that the suppression of the seized evidence is required. The secondary issue is whether the anticipatory search warrant that the Government subsequently obtained and executed on June 10, 2005 rectified the errors in the first search warrant, such that the evidence "seized" pursuant to that warrant should not be suppressed.

In *Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284 (2004), the Supreme Court was faced with a similar issue in a case involving a *Bivens* action brought against an ATF agent. The ATF agent applied for a search warrant to search the plaintiff's ranch for automatic firearms, parts to automatic firearms, destructive devices, including grenade launchers, rocket launchers and document pertaining to the purchase or manufacture of the same. The application was supported by the ATF agent's detailed affidavit which set forth the basis for his belief that the listed items were concealed on the ranch. In the place on the search warrant form where the property or items to be seized was to be described, however, the warrant erroneously described the dwelling house to be searched. This error was apparently not discovered by the magistrate judge who issued the warrant. Nor was it apparently discovered by the agents who executed the search. The Supreme Court noted that "[t]he warrant did not incorporate by reference the itemized list contained in the application. It did, however, recite that the Magistrate was satisfied the affidavit established probable cause to believe that contraband was concealed on the premises and that sufficient grounds existed for the warrant's issuance." 124 S.Ct. at 1288. When the warrant was executed, the agent "orally described the objects of the search" to the plaintiff's wife who was present at the ranch and to the plaintiff by telephone. The search did not result in the discovery of illegal weapons or explosives. The next day, in response to a request from the plaintiff's attorney, the

1 ATF agent faxed a copy of the page from the search warrant application which listed the items to be
2 seized.
3       The plaintiff thereafter filed a civil action against the ATF agent pursuant to *Bivens,* alleging that
4 the agent violated his Fourth Amendment rights. The district court granted summary judgment on the
5 grounds that there was no Fourth Amendment violation and that even if a violation occurred, the agent
6 was entitled to qualified immunity. The Ninth Circuit reversed in regard to the Fourth Amendment
7 claim on the grounds that the warrant was facially invalid because it did not describe with particularity
8 the place to be searched and the items to be seized. The Ninth Circuit "observed that the warrant's facial
9 defect 'increased the likelihood and degree of confrontation between the [plaintiffs] and the police' and
10 deprived the [plaintiffs] of the means 'to challenge officers who might have exceeded the limits imposed
11 by the magistrate.'" *Groh*, 124 S.Ct. at 1289.
12       In a five to four decision affirming the Ninth Circuit, the Supreme Court held that the warrant
13 was plainly invalid because it provided no description of the items to be seized. Because of this error,
14 the majority viewed the search as essentially warrantless. The Court stated that the fact that the
15 application adequately described the things to be seized did not save the warrant from facial invalidity
16 because the Fourth Amendment plainly requires particularity in the warrant, not in the supporting
17 documents. *Id.* at 1289, citing *Massachusetts v. Sheppard*, 468 U.S. 981, 988, n. 5, 104 S.Ct. 3424
18 (1984). The Court stated that the presence of a search warrant serves a high function "and that high
19 function is not necessarily vindicated when some other document, somewhere, says something about the
20 objects of the search, but the contents of that document are neither known to the person whose home is
21 being searched nor available for her inspection." *Id.* at 1290. The Court then stated:

> 22 We do not say that the Fourth Amendment prohibits a warrant from cross-referencing other documents. Indeed, most Courts of Appeal have held
> 23 that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of
> 24 incorporation, and if the supporting document accompanies the warrant. (Citations omitted.) But in this case the warrant did not incorporate other
> 25 documents by reference, nor did either the affidavit or application (which had been placed under seal) accompany the warrant. Hence, we need not
> 26 further explore the matter of incorporation.

27 *Groh,* 124 S.Ct. at 1290.
28 . . .

The Court also rejected the defendant's argument that the search should nevertheless be deemed reasonable because the scope of the search did not exceed the limits set forth in the description of the items to be seized in the application. In rejecting this argument, the Court again noted that "unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search), there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit." *Id.* 1291. The Court also stated that "a particular warrant also 'assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.' *United v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476." *Id.* at 1292. In a footnote to this passage, the Court noted, however, that neither the Fourth Amendment nor Rule 41 explicitly require that the search warrant be served on the owner of the premises before commencing the search. *Id.* n. 5. The Court also held that the defendant was not entitled to qualified immunity because no reasonable officer could believe that a warrant that plainly did not comply with the particularity requirement of the Fourth Amendment was valid. *Groh*, 124 S.Ct. 1294.

A minority of three justices, Thomas, Scalia and Chief Justice Rehnquist, argued that the failure to properly describe the items to be seized in the warrant did not render the search warrantless or unreasonable.[2] In this regard, the minority opinion stated:

> The Warrant Clause's principal protection lies in the fact that the Fourth Amendment has interposed a magistrate between the citizen and the police ... so that an objective mind might weigh the need to invade [the searchee's] privacy in order to enforce the law.'" (citation omitted). . . .
>
> But the actual contents of the warrant are simply manifestations of this protection. Hence, in contrast to the case of a truly warrantless search, where a warrant (due to a mistake) does not specify on its face the particular items to be seized but the warrant application passed on by the magistrate contains such details, a searchee still has the benefit of a determination by a neutral magistrate that there is probable cause to search a particular place and to seize particular items. In such a circumstance, the principal justification for applying a rule of presumptive unreasonableness falls away.

*Groh*, (Justice Thomas's minority opinion) 124 S.Ct. at 1300.

---

[2]In a separate dissent, Justice Kennedy agreed that the search was unconstitutional, but argued that the defendant was entitled to qualified immunity.

8

In arguing that the search was not unreasonable, the minority opinion also noted that prior to the execution of the warrant, the defendant briefed the search team and provided them with a copy of the search warrant application, the affidavit and the warrant to review and orally discussed the items for which the agents were authorized to search. *Id.* at 1301. The minority also questioned the majority's reliance on the searchee's right to know of the lawful authority for the search, but also stated that the plaintiffs' interest in this regard was served because the defendant provided their attorney with the portion of the application which listed the items to be seized.

In *United States v. Grubbs*, 547 U.S. 90, 126 S.Ct. 1494 (2006), the Court stated that the Fourth Amendment requires only that the warrant particularly describe the place to be searched and the person or items to be seized. The Court, therefore, held that the Fourth Amendment does not require that an anticipatory search warrant explicitly describe the triggering condition upon which the warrant may be executed. Although *Grubbs* did not overrule the specific holding in *Groh v. Ramirez*, the Court rejected the view that the Fourth Amendment's particularity requirement serves the property owner's interest in monitoring the officer's conduct in executing the search warrant. *Grubbs* states:

> This argument assumes that the executing officer must present the property owner with a copy of the warrant before conducting his search. (Citation omitted.) In fact, however, neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41 imposes such a requirement. *See Groh v. Ramirez*, 540 U.S. 551, 562, n. 5, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). "The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is ... evidence that the requirement of particular description does not protect an interest in monitoring searches." *United States v. Stefonek*, 179 F.3d 1030, 1034 (C.A. 7 1999) (citation omitted). The Constitution protects property owners not by giving them license to engage the police in a debate over the basis of the warrant, but by interposing, *ex ante*, the "deliberate, impartial judgment of a judicial officer ... between the citizen and the police," e.g. *Wong Sun v. United States*, 371 U.S. 471, 481-482, 83 S.Ct. 407, 9 L.Ed. 441 (1963), and by providing, *ex post*, a right to suppress evidence improperly obtained and a cause of action for damages.

*Grubbs*, 126 S.Ct. at 98-99.

In its recent decision in *United States v. SDI Future Health*, --- F.3d ---, 2009 WL 174910 (9th Cir. 2009), the Ninth Circuit has reiterated and to some extent clarified its prior case law regarding the incorporation of the affidavit into the search warrant. The defendants in *SDI* argued that the search warrant was invalid because it failed to describe the items to be seized with particularity. Defendants

9

also argued that the search warrant did not properly incorporate the provisions of the affidavit. The court stated that it considers an affidavit to be part of a warrant, and therefore potentially curative of defects in the warrant, "only if (1) the warrant expressly incorporated the affidavit by reference and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search." *SDI,* 2009 WL 174910 at *7, citing *United States v. Kow*, 58 F.3d 423, 429 n.3 (9th Cir. 1995). The court noted that the first prong of this rule requires "suitable words of reference," but there are no required magic words of incorporation. The court held that the warrant satisfied this prong because it explicitly referred to the "'supporting affidavit(s)' as the 'grounds for application for issuance of the search warrant.'" *Id.* at *8.

*SDI* also held that the second prong of the requirement was met because the lead agent and the search team had copies of the affidavit in their possession when they executed the warrant. The court also noted that the affidavit was available for reference by each member of the search team during the search. The court stated that "[n]othing more is necessary for the affidavit to ensure 'that the discretion of the officers executing the warrant is limited.' *Towne,* 997 F.2d at 548 (internal quotation marks omitted)." *Id.* at *8. Because the affidavit was properly incorporated into the warrant and was present during the execution of the search, it was sufficient to cure certain defects in the warrant's description of the items to be seized. Although the sealed affidavit was not provided to the defendants at the end of the search, the court held, based on *Grubbs, supra,* that this did not render the search unconstitutional.

In this case, Agent Olsen's April 22, 2005 affidavit set forth facts and circumstances which the magistrate judge concluded supported a finding of probable cause for the issuance of the search warrant. The affidavit also contained a detailed description of the premises located at 2605 Big Timber Drive. *Affidavit* ¶ 76. The affidavit also referenced the items to be seized which were set forth in Attachment B to the affidavit. *Id.* ¶74. The Court has been provided with a copy of the affidavit contained in Case No. 2:05-mj-0497-LRL which indicates that Attachment B was physically attached to the affidavit presented to Magistrate Judge Leavitt. Therefore, unlike the circumstances in *Groh v. Ramirez*, there is no reason to suspect that the magistrate judge did not consider the list of items to be seized in issuing the search warrant.

. . .

1    The form language of the April 22, 2005 search warrant also clearly contained suitable words of
2 reference to incorporate the affidavit, to-wit:

> I am satisfied that the affidavit(s) attached hereto and incorporated herein and any record testimony established probable cause to believe that the person or property so described is now concealed on the person or premises above-described and established ground for the issuance of this warrant. Said Affidavit is attached hereto and incorporated by reference.

6    Although the affidavit was not actually attached to the subject warrant in this case, the language
7 as a whole is sufficient to incorporate the provisions of the affidavit into the warrant. *SDI, supra.* The
8 Government has also provided a declaration from Agent Murphy (Olsen) stating that: (1) the members
9 of the search team were required to read the affidavit, Attachment "B" and the search warrant prior to the
10 search; (2) the contents of the affidavit, Attachment "B" and the warrant were also reviewed with the
11 search team members at the staging area shortly before the search was conducted; and (3) the affidavit
12 and Attachment "B" were physically present during the execution of the search on April 25, 2005.
13 Agent Murphy's affidavit provides sufficient evidence to satisfy the second prong for incorporation of
14 the affidavit into the warrant as set forth in *SDI* and previous Ninth Circuit decisions.

15    This case is therefore factually distinguishable from *Groh v. Ramirez* which held that the
16 reasonableness of the search could not be justified based on the description of the items to be seized in
17 the affidavit or application because neither document was incorporated into the warrant and neither
18 document was present when the search was executed. *Groh v. Ramirez* is also arguably distinguishable
19 because it involved a civil action and did not directly address whether the evidence seized pursuant to
20 such a defective warrant should be suppressed under the exclusionary rule. It appears reasonably likely,
21 however, that the majority in *Groh* would have held that evidence should be suppressed.

22    In *Herring v. United States*, --- U.S. ---, 129 S.Ct. 695 (2009), however, a different majority of
23 the Supreme Court has retreated from applying the exclusionary rule in circumstances where merely
24 negligent errors render a warrant constitutionally invalid. In *Herring*, the police arrested the defendant, a
25 previously convicted felon, based on erroneous information provided by another police agency that there
26 was an outstanding warrant for his arrest. The officers conducted a search incident to arrest during
27 which narcotics and a firearm were found on defendant's person. In holding that the evidence should not
28 be suppressed, the majority states:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systematic negligence. The error in this case does not rise to that level.

*Herring*, 129 S.Ct. at 702.

Under this standard, it is unlikely that the conduct of the ATF agent in *Groh v. Ramirez* would have resulted in the suppression of evidence if the agents had found illegal weapons or explosives during the search and a prosecution had then been initiated.

*Grubbs, Herring* and *SDI* do not eliminate the requirement of the Fourth Amendment and Rule 41(e) that the warrant describe the place to be searched or the items to be seized. If the incorporated affidavit is sealed and/or is not provided to the occupant of the premises with the search warrant, then the warrant itself must contain or have attached to it a description of the premises to be searched and a particular description of the items to be seized. It appears to be the usual practice in this district to attach such descriptions to the search warrant regardless of whether the affidavit has been sealed. Suppression of the evidence is not required, however, where the failure to include a description of the premises to be searched or the items to be seized in the warrant was due to innocent mistake or simple negligence, and the affidavit which contained such descriptions was incorporated into the search warrant, was actually present at the premises during the search, and the search team members were provided with the affidavit and pertinent descriptions of the premises and items to be seized.

The affidavit in this case was incorporated into the search warrant in accordance with the requirements of *SDI* and other Ninth Circuit cases. The Court is also satisfied that the agents who conducted the search were provided with the sealed affidavit for review prior to executing the search and that the affidavit was present during the execution of the search. The failure to attach the descriptions of the premises and the items to be seized to the search warrant was the result of mistake or negligence by the Assistant United States Attorney or the FBI agents. There is no evidence that the AUSA or the agents deliberately or recklessly failed to attach the descriptions to the warrant. Nor does their conduct rise to the level of gross or systematic negligence.

. . .

## CONCLUSION

The Court therefore concludes that the defects in the April 22, 2005 search warrant do not require suppression of the evidence seized during the April 25, 2005 search. Accordingly,

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Suppress and for Return of Property and Request for Hearing and for Review of Seized Evidence (#18, #19 and #20) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 18th day of February, 2009.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge